## COLLINS *vs.* THE STATE.

[INDICTMENT FOR RECEIVING STOLEN GOODS.]

1. *Charge on guilty knowledge as constituent of offense.*—A charge to the jury, instructing them, in effect, that if the prisoner received the stolen goods under such circumstances that any reasonable man of ordinary observation would have known that they were stolen, and concealed them, then they were authorized to find that he knew they had been stolen, asserts a correct legal proposition.

Collins v. The State.

2. *Practice in giving further instructions to jury in absence of prisoner's counsel.* The presiding judge having quit the bench, on finishing the business of the day, while the jury in a criminal case were deliberating on their verdict; and the counsel engaged in the case having left the court-room, under an agreement that the clerk might receive the verdict of the jury,—the fact that the court, on the request of the jury for further instructions, afterwards gave them an additional charge, which asserted a correct legal proposition, in the presence of the prisoner himself, but in the absence of his counsel, and without their knowledge or consent, is not an error which will work a reversal of the judgment.

APPEAL from the City Court at Mobile.

Tried before the Hon. ALEX. McKINSTRY.

THE prisoner, George Collins, was indicted for receiving stolen goods, the personal property of one Anderson, knowing them to be stolen; was convicted, and sentenced to three years imprisonment in the penitentiary. During his trial, he reserved the following exceptions to the rulings of the presiding judge:

" The State proved, that one Moses Anderson, before the finding of the indictment, lost from his store-house certain articles of property, amongst which were those mentioned in the indictment, and which the evidence tended to prove had been stolen; that afterwards the prisoner, being suspected and accused by a policeman of having a portion of said property in his possession, at first denied the fact, but, immediately afterwards, under threats of being carried to the guard-house, admitted the possession, and produced the articles mentioned in the indictment,—remarking that one Parker had his share. The defendant then proved, by one Rose, that the property mentioned in the indictment and found in his possession, together with other new articles of considerable value, were accidentally discovered by him (Rose) under an old house in the city of Mobile; that he thereupon called the defendant, and showed them to him, when he (defendant) remarked that they were just such articles as he wanted; and that they thereupon jointly took the property so discovered, and carried it away,—among the rest the articles mentioned in the indictment.

" This was all the evidence in the case, in reference to

the question to the court and the reply thereto hereinafter set forth, as to the guilty knowledge. After argument of counsel, the court charged the jury, and they retired to consider of their verdict. Before the jury returned, the business for the day being concluded, the solicitor and the prisoner's attorney, in the presence, and with the approbation of the court, consented that the clerk should receive the verdict. The judge of the court, and the members of the bar, then retired from the court-room for the day; and the prisoner's counsel, having no reason to suspect or believe that any further business would be done by the court during that day, or any further instructions be given to the jury in said cause, [also left the court-room.] The jury sent for the judge, and were brought into court; and the court, in answer to an inquiry in writing by them, and in the presence of the prisoner, but in the absence of his counsel, and without their knowledge or consent, (the prisoner not being called upon to assent thereto, and not assenting,) charged the jury as follows: 'The jury state that they find that the goods were stolen, and ask, if they were received and concealed by the defendant under such circumstances that any reasonable man of ordinary observation would have known that they were stolen, and if the defendant knew of those circumstances, whether they are authorized to find that he knew of it; and the judge replied, yes.' To the fact of the court's having done this in the absence of the prisoner's counsel, under the circumstances hereinabove stated, as well as to the charge itself so given, the prisoner, by his counsel, excepted."

H. F. DRUMMOND, for the appellant.

M. A. BALDWIN, Attorney-General, *contra*.

STONE, J.—The charge of the court, to which objection is here urged, throwing it into the form of a charge given, may be thus stated, without doing violence to any of its terms:

"If you find the goods had been stolen, then, on the question of knowledge, I charge you that, if you find the

Collins v. The State.

defendant received and concealed the goods, and received them under such circumstances that any reasonable man of ordinary observation would have known that they were stolen; and if you find that the defendant knew of those circumstances, then you are authorized to find that the defendant knew they had been stolen."

It will be observed, that this charge presents no question on what facts are necessary to constitute a larceny; nor does it undertake to define the constituent elements of a felonious *receiving* under the statute.—Code, § 3178. Its whole force is expended on the question of knowledge.

In further criticism of this charge, we may remark, it does not command or direct the jury to find *knowledge*, if they found the supposed facts. That would have been an invasion of their province. It simply instructed that body, that if the specified facts existed, they were authorized—permitted—had authority—to find the fact of knowledge.

Knowledge of the theft, as an element of the offense denounced by section 3178, could rarely be the subject of direct proof. Like most other facts, it may be inferred from other sufficient facts and circumstances. In criminal trials, the jury are charged with the ascertainment of the facts, and, in doing so, are permitted to draw all reasonable and satisfactory inferences.—See Rosenbaum v. The State, at the present term. The charge asserted a correct legal proposition.—Morgan v. The State, at the present term; Ogletree v. The State, 28 Ala. 693; Rosc. Cr. Ev. 875; McGehee v. Gindrat, 20 Ala. 95; Centre v. P. & M. Bank, 22 Ala. 743; Burns v. Taylor, 23 Ala. 255; Brewer v. Brewer, 19 Ala. Rep. 482; Bradford v. Harper, 25 Ala. R. 337; Garrett v. Lyle, 27 Ala. R. 586; Regina v. Smith, 33 Law & Eq. Rep. 531.

[2.] The record informs us, that after the jury had been charged, and had retired, the court, having finished the business of the day, withdrew from the bench; and that the counsel for the prosecution and defense, having agreed that the clerk might receive the verdict, left the court-room; that subsequently, the jury having sent for the

judge, he, in answer to a written request by them, gave them the charge which we have been considering. This, we are informed by the record, was done in the court-room, and in the presence of the prisoner; but "in the absence, and without the knowledge or consent of the counsel for the accused." This matter is here assigned for error.

It will be observed, that the only ground of exception to this action of the court is, that it was done *in the absence* of the counsel, and without his *knowledge* and *consent.* Construing this language literally, it does not affirm that the counsel was not called, or sent for. In laying down a rule for the government of cases, such as this, we can only assert principles which will apply alike to all cases similarly circumstanced. Counsel might be beyond the reach of the court, or, it is conceivable, may abandon the defense. We find nothing in this record which affirms such to have been this case; yet the record does not show that the prisoner's counsel could have been brought to the court, when the jury desired further instructions. To deny to the court, in general terms, the right to give to the jury further or explanatory charges in the absence of the counsel, might leave the court, the jury, and the administration of the criminal law, at the mercy of persons over whose movements the court could exert no control; or, within the arbitrament of accidents, against which no human vigilance could provide. To lay down such a rule, might lead to the most embarrassing results; and in cases, not without the pale of supposition, might result in a total denial of justice.

While we concede the unqualified right of the accused "to be heard by himself and counsel;" that this right extends beyond the examination of witnesses, the discussions of law and the testimony, and embraces every important order made, or proceeding had; still we think that, in the mere incidents or accidents of the trial, something must be conceded to the exercise of a just and enlightened judicial discretion. In giving a new or explanatory charge, or in repeating a former charge, courts should, and doubtless would, give counsel the priv-

ilege of being present, by having them called, or, if within reach, sent for. We think, however, that when counsel have voluntarily absented themselves from the court-room, under an agreement that the clerk may receive the verdict; it is not an error for which we should reverse, that the court afterwards, the prisoner being present, at the instance and request of the jury, gave them a charge, which is unexceptionable as a legal proposition, merely because this was done in the absence, and without the knowledge or consent of the prisoner's counsel.

We need not, and do not, announce what would be our opinion, if the record informed us that the counsel, on leaving the court-room, requested to be called or notified, should further action in the case become necessary; or that the counsel were within reach, and were not called. That case is not presented by this record, nor is it probable it will arise.

The judgment of the city court is affirmed, and its sentence must be executed.